THE BOARD OF PRESIDENT AND DIRECTORS OF THE ST. LOUIS PUBLIC SCHOOLS, Plaintiffs in Error, *vs.* HAMMOND, Defendant in Error.

1. Margaret Lachaisse presented to the recorder of land titles a claim for confirmation. As evidence of her claim, she filed an order of survey by the Spanish lieutenant governor of land described as previously conceded to her, and the surveyor's return, stating that he had put her in possession of the whole space of vacant land situate between the lot of Lecompte and the land conceded to Clamorgan, bounded on the west by Main street. The return further stated that the "half moon," forming part of the fortifications of the town, and situated on the margin of the river, was on the eastern end of the lot. The concession of Clamorgan extended to the river, and was confirmed to that extent. The concession of Lecompte extended to the river, and was confirmed "the usual extent towards the river." The claim of Madame Lachaisse was reported by the recorder for confirmation, being described under the head of "quantity claimed," as the "vacancy between Lecompte and Clamorgan," and under the head of "where situate," as a "lot in the town of St. Louis," and was confirmed by the act of April 29, 1816. *Held:* The confirmation was for all the vacant land between Lecompte and Clamorgan, from Main street to the river, and not merely of a lot of the usual depth from Main street towards the river.

*Error to St. Louis Court of Common Pleas.*

This was an action of ejectment for a lot in the city of St. Louis, bounded south by Cherry street, west by Main street, and east by the Mississippi river, begun by the plaintiffs in error in 1840. It is the same case reported in 8 Mo. Rep. 65, where it was reversed and remanded, and now comes here after another trial.

The ground in controversy was within the limits of the town of St. Louis as it stood incorporated on the 13th of June, 1812, and was, in February, 1840, surveyed, designated and set apart to the plaintiffs, under the second section of the act of congress of May 26, 1824, as land which had been reserved for the support of schools by the second section of the act of June 13, 1812.

The defendant's title was under a confirmation to Margaret

Lachaisse, by the act of April 29, 1816, and the only question now argued by the plaintiffs in error in this court was as to the extent of this confirmation, they claiming that it did not extend east to the river, and so did not include a portion of the ground in dispute.

The lot confirmed to Madame Lachaisse was described by Recorder Bates, in his tabular report, under the head of "quantity claimed," as "vacancy between Lecompte and Clamorgan," and under the head of "where situate" as "lot in town of St. Louis," and this was the only matter of description in the confirmation itself. As evidence of her claim to a confirmation, Madame Lachaisse had filed with the recorder a petition by her to the Spanish lieutenant governor, Delassus, an order of survey by the lieutenant governor, and the surveyor's return. The petition was dated November 20, 1803, and stated that the petitioner, previously, in 1802, had applied for the grant of a lot "bounding on Mr. Nicholas Lecompte to the north of this village," and that application had been made to Soulard for the survey, who had put her off with excuses of opposition by Lecompte, &c., and she now prayed for an order on the surveyor to put her in possession of the lot petitioned for, and which had been granted her.

On the 21st of November, 1803, Delassus issued an order that Soulard should notify Lecompte to exhibit his title, and upon his failure to do so, that he (Soulard) should survey the land ("*terre*") "by us conceded to the said Madame La Caisse in the year 1802."

On the 29th of January, 1804, Soulard made his written return upon this order, as follows :

" I, the undersigned, in virtue of the foregoing decree, have, on the 15th of January, of this year, put Madame widow Laquaisse in possession of the whole space of vacant land (*terre*) at the north of this town, situate between the lot (*terrein*) of Mr. Nicholas Hebert Lecompte and the land, (*terre*,) which was conceded to Mr. Jacques Clamorgan by the lieutenant governor, Don Carlos Dehault Delassus, under date of 28th Novem-

ber, 1799, which space of land could not be determined by regular survey in consequence of the difficulties which Mr. Nicholas Hebert Lecompte encountered in establishing, in a legal manner, his rights as to the true extent of the land which he occupies, and for want of knowing whether there ought to be there a cross street between the lot of the said lady and that of the said Nicholas Hebert Lecompte, or whether the same should be between that of said widow Laquaisse and the land of Mr. Jacques Clamorgan. In faith whereof, we have delivered these presents to said lady, for her to use, whenever necessary or reasonable, for establishing the legality of her rights to the ownership of the whole vacant space existing between the lot of the said Nicholas Hebert Lecompte and the land (*terre*) of Mr. Jacques Clamorg·n, less the cross street which may be fixed by authority, whether to the south or to the north of said lot, which is (*se trouve*) bounded on the front by Main street, and on its depth by that which shall be determined in this regard, seeing that the Half Moon, situated on the margin of the river, and forming part of the fortifications of this town, is situated on the east part of said lot, the whole of right to be subjected to regular measurement, fixing of land-marks, copy of certificate of survey, registry of same, &c., the moment that said existing obstacles shall be removed by proper authority. St. Louis of Illinois, 29 January of the year 1804. Antoine Soulard."

The defendant gave in evidence the concessions to Lecompte and Clamorgan, both of which called for Main street on the west and the river on the east. The concession of Clamorgan was confirmed on the 20th of September, 1810. The claim of Lecompte was confirmed by the recorder in these words : " Confirmed, the usual extent towards the river, and survey."

The defendant also gave in evidence the concessions to Antoine Soulard, Antoine Roy, Emilien Yosti, Hyacinth Egliz and Pierre Chouteau of *tracts* of land lying along the river in succession, north of Clamorgan's tract, and east of the common field lots.

A. H. Evans and J. C. Brown, surveyors, called as witnesses, stated that in surveying the Lachaisse lot, they would run to the river. Brown stated that in surveying a lot in that part of the town, laid out into squares and surrounded by cross streets, if no depth was mentioned, he would go to the depth of 150 feet, but would not do so along the river, nor would he do so in the vacant space between Clamorgan and Lecompte, as it was beyond the limits of the old town. Being asked how he would survey the confirmation to Lecompte, he stated that he would survey it 150 feet, French measure, from Main street towards the river. He would survey a town lot, granted and confirmed as such, without any specific calls, to the depth of 150 feet. A lot east of Main street, without calls, was understood to be 150 feet.

The plaintiffs then asked the following instructions, among others :

1. The confirmation by the act of April, 1816, of a lot in the town of St. Louis to Margaret Lachaisse, as described in the report of the recorder of land titles given in evidence in this case, operates as a confirmation of a lot of the ordinary extent from Main street towards the river.

2. If the jury find that the ordinary depth of a lot east of Main street was, on the 20th of December, 1803, 150 feet, French measure, then the confirmation to Madame Lachaisse is limited to that extent.

These instructions were refused, and the plaintiffs excepted.

There was a verdict for the defendant, and the plaintiffs bring the case to this court by writ of error. The cause was submitted at the March term, 1854. Briefs are found on file by *Edward Bates,* for plaintiffs in error, and by *Josiah Spalding,* for defendant in error.

Scott, Judge, delivered the opinion of the court.

The plaintiffs in error, both in the court below and in this court, maintain that the extent of the lot confirmed to Madame Lachaisse is a question of law, arising from the documents in

evidence, and in the brief submitted to the court, that is the sole question presented for our determination.

Without expressing an opinion as to the absolute extent of the confirmation, under all circumstances, we are led to the conclusion that all the land that could be conceded by public authority, between Main street and the river, was granted to Madame Lachaisse, her northern and southern limits being defined in her concession.

It does not appear that there has been any survey of the grant to M. Lachaisse, and we are thrown on the concession itself and the documents in the cause, in order to ascertain its extent.

On the north, the Lachaisse grant was bounded by Clamorgan, and on the south by Lecompte. Both of these concessions call for the river as their eastern boundary. Madame Lachaisse's grant was bounded by the concessions themselves, and not by the confirmations, which might afterwards be made of them.

As the claim of Lachaisse is confirmed by Recorder Bates as a lot, it is contended that it must be of the usual dimensions of a lot, 120 by 150 feet. Whatever weight this argument might have, under some state of circumstances, it cannot prevail against the array of facts which attend this case. The report of the Spanish surveyor, deputed to survey the concession, shows, clearly, that it extended to the river. Its northern and southern boundaries are the concessions of Clamorgan and Lecompte. Clamorgan's concession is confirmed to the river. Lecompte's is confirmed to the usual extent towards the river. If Lecompte's confirmation was only 150 feet deep, yet, as Clamorgan's ran to the river and was the northern boundary of Madame Lachaisse, and as the Half Moon, which is on the margin of the river, is stated in surveyor Soulard's return, which is a part of the evidence of the claim as filed, to be on the lot of widow Lachaisse, it is evident, on the face of the claim, still that it ran to the river. As the claim comprehended the whole vacant space between Clamorgan and Lecompte, and both of

these concessions call for the river as the eastern boundary, the extent of the confirmation does not depend on what was the usual depth of lots. Experienced surveyors, skilled in making surveys in this locality, and under similar concessions, express the opinion that the claim should be surveyed as extending to the river. This, though no evidence for jurors in locating a grant, (8 Mar. La. N. S. 695,) yet judges may regard it in the formation of their opinions. Under the Spanish government, lots within the town were conceded with the river as a front. It was a matter of doubt whether the lot was within or without the limits of the old town. Instances were produced in which lots exceeding in extent the ordinary size, were conceded by the Spanish authorities.

The judgment is affirmed. Judge Ryland concurs. The cause was submitted before Judge Leonard came upon the bench.